OPINION
Kim Howard is appealing the judgment of the Montgomery County Common Pleas Court, which convicted her of two counts of robbery.
On December 3, 2000, at approximately 5:00 a.m., United Dairy Farmers' (hereinafter "UDF") assistant manager, Christina Tobin, was preparing to open the store when she observed Ms. Howard standing outside the door. Ms. Tobin recognized Ms. Howard because she had briefly worked at the store but had not worked there since May of 2000. When Ms. Tobin opened the store, Ms. Howard entered and brought several things to the counter to purchase, among these items was a cup of coffee. Ms. Howard then asked Ms. Tobin for some ice cream. Ms. Tobin began to fill Ms. Howard's order, but Ms. Howard approached her and told her to "go to the back room before I blow you away."
Once in the back room, Ms. Howard ordered Ms. Tobin to open the safe, but there was no safe in the backroom. Therefore, Ms. Tobin had to go back out to the front counter to open the safe next to the cash register. But this safe operated on a ten minute delay. While waiting for the safe to open, Ms. Howard ordered Ms. Tobin to go back into the back room and open the cabinet which holds the security camera tape. Ms. Tobin opened the cabinet and Ms. Howard took the tape from the VCR and placed it in her pants. Once the safe opened, Ms. Howard removed all the money from the safe and several pre-paid phone cards. In total, Ms. Howard stole more than $3,815.00.
Before leaving, Ms. Howard threatened to "blow [Ms. Tobin] away" if she called the police. Additionally, during the incident, Ms. Howard warned Ms. Tobin not to attempt to press any panic buttons or alarms because there were four guns pointed at her. Ms. Howard then fled with the money, phone cards, and several of the items she initially intended to purchase. However, Ms. Howard neglected to take with her the cup of coffee. After Ms. Howard left, Ms. Tobin locked the store and called the police. The police were able to obtain a latent fingerprint from the bottom of the cup, which was subsequently matched to Ms. Howard's right index finger.
On December 10, 2000, at the same UDF shortly before 12:40 a.m., William Wasner, a UDF clerk, observed Ms. Howard enter the store and get a cup of coffee. Mr. Wasner thought that Ms. Howard looked familiar but did not recognize her as a former coworker until she approached the counter with the coffee. Ms. Howard then handed him a note stating that there were guns pointed at him and that he should give her all the money that was in the registers.
Mr. Wasner then emptied both cash registers and placed the money in a bag. Additionally, Ms. Howard then ordered Mr. Wasner to print two money orders for $350.00 each, which he did. Ms. Howard then demanded the security tape from the back room. After taking the tape, Ms. Howard left the store, taking the cash, money orders, coffee, and note with her. Once Ms. Howard left, Mr. Wasner pressed the alarm and called the police. The money taken from the registers totaled $130.00.
On the afternoon of December 10, 2000, Ms. Howard met and purchased a used "boom box" from Gary Van Buckner for $350.00. Ms. Howard gave Mr. Van Buckner one of the stolen money orders as payment. Mr. Van Buckner later identified Ms. Howard as the person who gave him the money order from a photo spread shown him by the police.
On January 2, 2001, Ms. Howard was indicted on two counts of robbery, third degree felonies. The case proceeded to trial on April 9, 2001. At trial, Detective Driscoll testified that after discovering that one of the money orders taken during the robbery on December 10, 2000 had been given to Mr. Van Buckner, he prepared a photo spread and presented it to Mr. Van Buckner to determine if he could identify the female who had given him the money order. Detective Driscoll testified that the photo spread given to Mr. Van Buckner contained photographs of six different black females, one of which was Ms. Howard. Detective Driscoll testified that Mr. Van Buckner without hesitation, quickly picked out the photograph of Ms. Howard as the person who had given him the $350.00 money order.
However, Mr. Van Buckner had previously testified that Detective Driscoll had shown him twelve photographs, two sheets of six photographs, and that he was able to make an identification of Ms. Howard from among those photographs. On cross-examination, Detective Driscoll was asked about the discrepancy in the number of photographs shown to Mr. Van Buckner. The detective reiterated that he was certain that Mr. Van Buckner was shown only one photo spread and that photo spread contained only six photographs.
Defense counsel then produced a copy of a sheet of paper containing six different photographs of Ms. Howard, which defense counsel had received through discovery. Defense counsel asked the detective whether this sheet could have been shown to Mr. Van Buckner. The detective denied that this sheet was ever shown to Mr. Van Buckner and reiterated that Mr. Van Buckner was only shown the one sheet with the photographs of six different women. However, Detective Driscoll was not asked by defense counsel to explain how or why the document with six photographs of Ms. Howard was created. Therefore, on re-direct examination, the prosecutor felt it necessary for the detective to give that explanation. Detective Driscoll explained that the sheet of six photographs of Ms. Howard was created when he searched the police department's database to see if a photograph of the target suspect existed. The detective's search on the computer produced six different photographs of Ms. Howard, which the detective stated, "[i]ndicat[ed] that she'd been arrested at least six times." Defense counsel immediately objected, prompting the trial court to sustain the objection and give the following curative instruction to the jury:
 "I'm going to instruct the Jury at this point to disregard the last statement of this officer and not to give any consideration to the last answer at all. There is nothing to be taken by the jury or by the Court from the last answer given by him."
Defense counsel did not request any further instruction nor make any further mention of Ms. Howard's prior arrests. Defense counsel did not move for a mistrial.
The jury returned guilty verdicts on both counts of robbery. Ms. Howard was subsequently sentenced to two concurrent terms of three years of incarceration. Ms. Howard has filed this appeal.
Ms. Howard raises the following assignments of error:
 "1. THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL AS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS WHEN IT FAILED TO DECLARE A MISTRIAL AFTER A PROSECUTION WITNESS TOLD THE JURORS THAT APPELLANT HAD BEEN ARRESTED ON "AT LEAST" SIX PRIOR OCCASIONS.
 "2. TRIAL COUNSEL WAS INEFFECTIVE, IN VIOLATION OF THE FEDERAL CONSTITUTION, FOR FAILING TO REQUEST A MISTRIAL."
Appellant's first assignment of error
Ms. Howard argues that the trial court should have sua sponte declared a mistrial due to Detective Driscoll's statement. We disagree.
The trial court has the discretion to determine whether "a reference in the testimony to a forbidden subject merits the extreme remedy of a mistrial." State v. Jones (1992), 83 Ohio App.3d 723, 737, citing Statev. Reynolds (1988), 49 Ohio App.3d 27, 33. A mistrial should not be ordered in a criminal case merely because an error or irregularity has occurred but rather only when the substantial rights of the accused are adversely affected such that a fair trial is no longer possible. Statev. Reynolds (1988), 49 Ohio App.3d 27. Great deference is given to a trial court's determination whether or not to grant a mistrial as the trial court is in the best position to judge whether the situation warrants a mistrial. State v. Glover (1988), 35 Ohio St.3d 18, 19. Therefore, the decision of the trial court will only be reversed upon a finding of abuse of discretion, which only occurs where the decision is unreasonable, arbitrary or unconscionable. State v. Agner (1999),135 Ohio App.3d 286, 295.
A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when "the ends of public justice would otherwise be defeated." Cleveland v. Walters (1994), 98 Ohio App.3d 165,168. If no motion for a mistrial is requested at trial, the failure to grant a mistrial sua sponte is judged under a plain error standard.State v. Jones (1996), 115 Ohio App.3d 204, 207. Under this standard, the error is deemed waived unless the outcome of the trial would have been different, but for the error. State v. Wickline (1990),50 Ohio St.3d 114, 119-120. A court should only take notice of plain error under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Landrum (1990), 53 Ohio St.3d 107,111; State v. Carpenter (1996), 116 Ohio App.3d 615, 621.
Generally, a police officer is prohibited from testifying about a defendant's prior arrests. State v. Jones (1992), 83 Ohio App.3d 723,737. Evidence tending to show that the defendant committed another crime independent of the crime for which he is on trial is prohibited.State v. Hector (1969), 19 Ohio St.2d 167, 48 O.O.2d 199. Evidence of a prior offense is prohibited because it is of such an inflammatory nature that it may incite the jury to convict based on past misconduct rather than the offense at hand. State v. Allen (1987), 29 Ohio St.3d 53, 55. An appellate court should presume that a jury followed an instruction by the trial judge to disregard inadmissible evidence. State v. Treesh
(2001), 90 Ohio St.3d 460, 480, 2001-Ohio-4; State v. Loza (1994),71 Ohio St.3d 61, 75, 1994-Ohio-409.
Ms. Howard argues that but for the improper statement of the detective the outcome of the trial would have been different. Ms. Howard points to the testimony of her mother who stated that Ms. Howard was at home asleep an hour after the December 3, 2000 robbery and that on December 10, 2000, Ms. Howard was also at home at the time of the robbery. However, the evidence against Ms. Howard was substantial. Ms. Howard's fingerprints were found on the cup held by the robber at the December 3, 2000 robbery. Ms. Howard argues that her fingerprints could have been left on the cup from when she previously worked there. Yet, this is unlikely since Ms. Howard had not worked at the UDF for over six months and the cups, which the UDF goes through thousands in a month, come in sealed sleeves of 25 cups each. Moreover, both UDF employees who were robbed, testified that they personally knew and recognized Ms. Howard from her previous employment at the UDF and that she was the person who robbed them. Although Ms. Howard claims that they have motive to lie because when she was an employee she accused both of them of stealing from the UDF, both witnesses testified that they had been angry at the time of the accusation but had since forgotten about the incident. Finally, the State also presented the testimony of Mr. Van Buckner, who had possession of one of the stolen UDF money orders. Mr. Van Buckner testified that he chose Ms. Howard out of a photo spread and that she was the person who gave him the stolen UDF money order in exchange for a used boom box. Despite the fact that Mr. Van Buckner did not recall the exact address of where the exchange occurred, Mr. Van Buckner was able to describe where the exchange occurred, knew how to get there, and could describe some of the other persons in attendance. We find the evidence against Ms. Howard was overwhelming and that the outcome of the trial would have likely been the same even if the improper statement by the detective had not been made. We cannot say that the trial court abused its discretion in failing to order a mistrial sua sponte or that the failure to order a mistrial created a manifest miscarriage of justice. Ms. Howard's first assignment of error is without merit and is overruled., Appellant's second assignment of error
Ms. Howard argues that her trial counsel was ineffective for failing to request a mistrial after Detective Driscoll's improper testimony. We disagree.
We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington (1984),466 U.S. 668. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See id. at 687-688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 687. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id. at 689. When a reference to a defendant's prior record does not rise to the level of plain error meriting the trial court to sua sponte declare a mistrial, then "there is no basis to claim that [defendant's] trial counsel acted ineffectively in failing to seek a mistrial." State v. Jones (1996), 115 Ohio App.3d 204,208.
Similar to the previous assignment of error, Ms. Howard cannot meet the second requirement of Strickland, that but for her counsel's failure to request a mistrial, the outcome would be different. As stated above, the evidence against Ms. Howard was overwhelming. Her fingerprints on the coffee cup, the identification of the two witnesses, and the identification of Mr. Van Buckner were solid evidence of Ms. Howard's guilt, regardless of whether a mistrial would have been requested. Moreover, Ms. Howard's trial counsel was not ineffective in failing to request a mistrial pursuant to Jones because the detective's statement did not rise to the level of plain error. Thus, Ms. Howard cannot establish that her trial counsel was ineffective for failing to request a mistrial. Ms. Howard's second assignment of error is without merit and is overruled.
The judgment of the trial court is affirmed.
BROGAN, J. and GRADY, J., concur.