OPINION
{¶ 1} Defendant-appellant, Michael S. Smith, appeals from the judgment of the Franklin County Court of Common Pleas, whereby a jury convicted appellant of 12 counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322.
 {¶ 2} The Franklin County Grand Jury indicted appellant on 18 counts of pandering sexually oriented matter involving a minor. Pursuant to R.C. 2907.322(C), the charges are third-degree felonies because appellant was previously convicted of illegal use of a minor in a nudity oriented material or performance, in violation of R.C. 2907.323, on February 10, 2003. The charges at issue here stem from appellant possessing photographs that depict minors engaged in sexual activity. A law enforcement officer found the photographs on appellant while searching him incident to an arrest on August 4, 2003.
 {¶ 3} Appellant possessed the sexually explicit photographs in a packet containing 18 pages. Although all of the photographs depict minors, not all of the photographs depict minors that are nude or engaged in sexual activity. Thus, plaintiffappellee, the State of Ohio, did not indict appellant for all of the photographs. Likewise, some of the photographs depicting minors engaged in sexual activity are duplicates, and appellee "did not indict on those because those were duplicates." (Tr. at 78.) However, appellee did indict on separate counts the multiple images that depict a child in different sexual acts, reasoning that "the child has been victimized in multiple ways." (Tr. at 79.)
 {¶ 4} Appellant pled not guilty to the charges. Before the trial, appellee dismissed Counts 10, 11, 12, 13, 14, and 17. Appellee provided no reason for dismissing the counts. Appellee then asked the trial court to consider the remaining counts as "one through 12 as to prevent any confusion for the jury." (Tr. at 19.) Appellant did not object, and the parties thereafter referred to the remaining counts as re-numbered. The parties agreed to submit to the jury the photographs that only apply to the re-numbered counts. The parties also agreed to identify for the jury the particular photograph that pertains to the particular count.
 {¶ 5} Also before trial, appellant filed a motion to suppress the photographs. At the suppression hearing, appellee called Jonathan Juriga to testify. Juriga testified that he was attending the Ohio State Fair on August 4, 2003, when appellant approached him and asked if he wanted to buy tickets for an Uncle Kracker concert scheduled at the fair. According to Juriga, appellant had four or five tickets. Juriga stated that he then noticed a sign that announced that the concert was free. Thus, Juriga declined to buy the tickets from appellant and went to the concert center to get his own tickets. Juriga testified that he then informed a state trooper about appellant's activities.
 {¶ 6} Ohio Highway Patrol Trooper Lawrence Firmi also testified at the hearing. Trooper Firmi was working at the Ohio State Fair on August 4, 2003. He was at the concert center when Juriga informed him that "[t]here's a guy out front trying to sell the tickets." (Tr. at 30.) According to the trooper, Juriga indicated that appellant was trying to sell the tickets for $10 or $12.
 {¶ 7} Trooper Firmi then testified that he stepped outside of the concert center and appellant started walking away. The trooper stated that he told appellant to "[c]ome back here." (Tr. at 31.) According to the trooper, he asked appellant if he was selling the Uncle Kracker tickets, and appellant denied such activity. Trooper Firmi testified that he next asked appellant for identification. After appellant provided his identification, the trooper checked appellant's background for outstanding warrants, and discovered that appellant had a "valid felony warrant." (Tr. at 32.)
 {¶ 8} Next, Trooper Firmi testified that he arrested appellant and searched him. The trooper indicated that he would place on the ground the items that he found on appellant. According to Trooper Firmi, Trooper Mark Glennon assisted the search and "held the pictures out" containing the sexually explicit material. (Tr. at 34.) Trooper Firmi testified that appellant had "pulled the papers out of his left rear pocket and placed them on the ground[.]" (Tr. at 36.)
 {¶ 9} Trooper Firmi testified that it would be "illegal to sell free tickets at the fair[.]" (Tr. at 31.) He noted that the troopers previously escorted such violators off the fairgrounds. Appellant's defense counsel asked the trooper to specify whether selling the tickets constituted a violation of law or fair regulations. The trooper responded: "Really I can't answer that for you. * * * I have never personally enforced a ticket scalping violation before." (Tr. at 35.)
 {¶ 10} Trooper Glennon also testified at the suppression hearing. Trooper Glennon verified that he assisted Trooper Firmi in searching appellant. According to Trooper Glennon, "Trooper Firmi was searching [appellant], taking items out of his pocket. He would set them on the ground. I picked them up, and I was holding those items as he was taking them from [appellant]." (Tr. at 38.) Appellee asked Trooper Glennon to identify an exhibit of 18 pages of photographs depicting minors. Trooper Glennon "recognize[d] all of those pages as pages that were recovered from [appellant.]" (Tr. at 39.)
 {¶ 11} After the hearing, the trial court denied the motion to suppress, and a jury trial commenced. At trial, appellee called Juriga, Troopers Firmi and Glennon to again testify to events leading up to Trooper Firmi's discovery that appellant possessed photographs of minors engaged in sexual activity. During trial, appellant and appellee stipulated that:
* * * [I]f called[,] Dr. Johnson, the head of the Family Development Clinic, Children's Hospital, would testify that the images presented in this case have been determined to be minors based upon scientifically and medically accepted methods involving growth and development indicators including, but not limited to, breast development, genital development, and bone and facial structure.
(Tr. at 86-87.) The parties further stipulated that appellant "was on February 10, 2003, in Madison County, Ohio, convicted of illegal use of a minor in nudity-oriented matter or performance, a violation of Ohio Revised Code Section 2907.323." (Tr. at 87.)
 {¶ 12} The jury found appellant guilty of re-numbered Counts 1 through 12. Thereafter, the trial court found appellant to be a sexual predator.
 {¶ 13} Next, the parties held a sentencing hearing. At the sentencing hearing, appellee agreed to merge Counts 5 through 12 into Count 1. Appellee reasoned that the photographs on the merged counts "were all contained on one page." (Tr. at 122.) The trial court then sentenced appellant to four years on Counts 1 through 4, a nonminimum prison sentence for third-degree felonies. R.C. 2929.14(A)(3). The trial court ordered appellant to serve the sentences consecutively, noting:
* * * [W]hen I look at two of the specific guidelines, one being the crime was committed while the defendant was under postrelease control, which he was, and the other one being his extensive criminal history, and the need for consecutive term is as to protect the public, I think those conditions are satisfied. And any argument against that I just don't find persuasive.
(Tr. at 124.)
 {¶ 14} Appellant appeals, raising four assignments of error:
I. The trial court erred when it denied appellant's motion to suppress evidence as the search at issue violated his rights under the Ohio and United States Constitutions.
II. The trial court erred by imposing consecutive sentences upon the appellant.
III. The trial court erred when it entered judgment against the appellant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
IV. A trial court may not sentence a defendant to non-minimum and consecutive sentences based on facts not found by the jury or admitted by appellant in violation of his right to trial by jury contra the Ohio and Federal Constitutions.
 {¶ 15} In his first assignment of error, appellant contends that Trooper Firmi obtained, through an unconstitutional search and seizure, the photographs that depict minors engaged in sexual activity. Thus, appellant argues that the trial court erred by denying his motion to suppress the photographs. We disagree.
 {¶ 16} "`Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact.'"State v. Featherstone, 150 Ohio App.3d 24, 2002-Ohio-6028, at ¶ 10, quoting State v. Vest (May 29, 2001), Ross App. No. 00CA2576. We review a trial court's findings of fact "for clear error" and give weight to the trial court's inferences drawn from those facts. Id., quoting Ornelas v.United States (1996), 517 U.S. 690, 699. However, we determine independently whether the trial court properly applied the substantive law to the facts. Featherstone at ¶ 10.
 {¶ 17} In challenging the trial court's decision to deny his motion to suppress, appellant argues that Trooper Firmi had no valid reason to stop him. The Fourth Amendment to the United States Constitution prohibits law enforcement from making unreasonable searches and seizures. State v.Kinney (1998), 83 Ohio St.3d 85, 87. Section 14, Article I of the Ohio Constitution is identical and co-extensive with the Fourth Amendment. Id. Warrantless searches and seizures are unreasonable, "`subject only to a few specifically established and well delineated exceptions.'" Xeniav. Wallace (1988), 37 Ohio St.3d 216, 218, quoting Coolidge v. NewHampshire (1971), 403 U.S. 443. Accordingly, evidence that law enforcement obtains from a warrantless search and seizure is subject to exclusion unless the search and seizure are constitutionally reasonable. See Xenia at 219; Wong Sun v. United States (1963), 371 U.S. 471, 487-488. The state bears the burden to demonstrate that law enforcement constitutionally executed the warrantless search and seizure. Xenia at 218.
 {¶ 18} A law enforcement officer "holds a public office upon a continuing basis." State v. Glover (1976), 52 Ohio App.2d 35, 38. Thus, Trooper Firmi was required to conduct searches and seizures in accordance with the Fourth Amendment while working at the fair. SeeGlover at 38; see, also, Hodge v. S.T. Lynd (2000), 88 F.Supp.2d 1234,1240 (recognizing that "Fourth Amendment principles" apply to law enforcement officers while providing security at a fair).
 {¶ 19} In response to appellant's arguments, appellee contends that Trooper Firmi had cause to stop appellant because appellant was violating a state fair regulation that prohibits individuals from scalping tickets. Scalping entails an individual reselling tickets at greater than face value. See Norwell v. Cincinnati (1999), 133 Ohio App.3d 790, 798. However, neither Trooper Firmi nor appellee articulates which particular fair regulation actually prohibits ticket scalping. Assuming such a regulation exists, we recognize that state troopers who work at the fair have authority to enforce fair regulations. See Hodge at 1241.
 {¶ 20} According to Trooper Firmi, troopers had previously enforced scalping violations by escorting violators off the fairgrounds. However, Trooper Firmi's encounter with appellant went beyond an attempt to escort him off the premises. Rather, the trooper detained appellant for questioning and investigation.
 {¶ 21} The Fourth Amendment applies when a law enforcement officer stops an individual in a manner that causes a reasonable person to believe that he or she is not free to leave. See United States v.Mendenhall (1980), 446 U.S. 544, 551, 554.
 {¶ 22} Here, Trooper Firmi ordered appellant to "[c]ome back here" when the trooper first approached him. (Tr. at 31.) Trooper Firmi questioned appellant about his activities. The trooper also asked appellant for identification and searched appellant's background for outstanding warrants. Applying the "reasonable person" test inMendenhall, we conclude that Trooper Firmi stopped appellant in a manner that caused him to believe that he was not free to leave. See Mendenhall
at 554. Accordingly, the Fourth Amendment governs the stop. Id. Indeed, both appellant and appellee acknowledge the Fourth Amendment's applicability to the stop.
 {¶ 23} A law enforcement officer may stop an individual based on a reasonable suspicion that criminal activity "may be afoot." Terry v.Ohio (1968), 392 U.S. 1, 30. Reasonable suspicion stems from "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. Id. at 21. Through such a stop, the law enforcement officer maintains "the status quo" while obtaining more information. Adams v. Williams (1972), 407 U.S. 143, 146.
 {¶ 24} Although appellee contends that Trooper Firmi stopped appellant for violating a fair regulation against ticket scalping, appellant violating such a regulation does not justify a stop under Terry. InTerry, the United States Supreme Court denoted law enforcement's authority to stop individuals to investigate criminal, not civil, infractions. Id. at 30; see, also, State v. Duncan (Wash. 2002),43 P.3d 513, 517 (recognizing that a civil infraction does not justify an investigative stop under Terry).
 {¶ 25} During the suppression hearing, Trooper Firmi was unsure if scalping tickets violated criminal law. Likewise, neither Trooper Firmi nor appellee cites a specific statute under the Ohio Revised Code or Columbus City Code that prohibits ticket scalping. Under R.C. 715.48(B), the state allows municipalities to regulate "the business of trafficking" entertainment tickets. However, we find no Columbus City Code against ticket scalping. We recognize that the Columbus City Code regulates a "peddler" who sells items "upon any street, road, alley, doorway, sidewalk, or upon vacant lots or other tracts of land, or from place to place, or house to house within the corporate limits of this city." Columbus City Code 523.01. These municipal regulations contain licensing requirements for peddlers, but do not prohibit ticket scalping. See Columbus City Code 523.01 et. seq.
 {¶ 26} Nonetheless, we do not review the stop under Trooper Firmi's subjective view of the circumstances. Under Terry, we review the facts "against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Id. at 21-22.
 {¶ 27} Thus, in United States v. Wallace (C.A.9, 2000), 213 F.3d 1216,1220, the United States Court of Appeals for the Ninth Circuit upheld a law enforcement officer's warrantless stop of an automobile even though the officer made the stop on a "mistaken impression that all front-window tint is illegal." The court considered the "objective circumstances" of the stop and not the "subjective motivation or intent" of the officer. Id. at 1219, citing Whren v. United States (1996), 517 U.S. 806, 810, 813. Thus, the court recognized that, although the law does not prohibit "all front-window tint," the defendant was nonetheless violating an applicable law that only allows window tint that "permits a light transmittance of at least 70 percent." Wallace at 1217, 1219-1220. Accordingly, reviewing the "objective circumstances" of the stop, the court concluded that the officer's observations "correctly caused him to believe" that the defendant was engaging in illegal activity; "he was just wrong about exactly why." Id. at 1220.
 {¶ 28} Although Wallace concerned a probable cause analysis under theFourth Amendment, the case is applicable here because it emphasizes thatFourth Amendment determinations, which include Terry stops, are reviewed under an "objective standard" and not under the law enforcement officer's subjective intent. See Whren at 813 (noting that courts do not examineFourth Amendment challenges "on the actual motivations of the individual officers").
 {¶ 29} Here, like Wallace, and pursuant to Terry, we conclude that a review of the facts "against an objective standard" establishes that reasonable suspicion existed that appellant was engaging in criminal activity at the Ohio State Fair. Specifically, although it does not prohibit ticket scalping, R.C. 1711.12 prohibits individuals from soliciting at the Ohio State Fair, and states:
During an Ohio state fair * * * no person shall cry, hawk, sell, or expose for sale any merchandise except the official fair or race program upon any public road at any point within one thousand feet of any entrance or exit of the fairground or, within the fairground, engage in any solicitation more than four feet from a concession or booth assigned to such person, except that vendors under contract may solicit within the immediate area of a grandstand or coliseum for the purpose of vending food, soft drinks, and souvenirs directly related to the program attraction.
R.C. 1711.12 is an unclassified misdemeanor and carries a fine "not less than ten nor more than fifty dollars." R.C. 1711.99. Thus, Juriga's indications that appellant was selling the concert tickets outside the concert center established reasonable suspicion that appellant was possibly violating R.C. 1711.12.
 {¶ 30} In addition, Juriga's indications established reasonable suspicion that appellant was trying to deceive fairgoers out of their money, thereby committing theft by deception in violation of R.C.2913.02(A)(3), which states that "[n]o person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * [b]y deception[.]" Money constitutes property subject to a theft by deception charge. See State v. Weiss, Union App. No. 14-03-24, 2004-Ohio-1948, at ¶ 14, 16.
 {¶ 31} Juriga's statements also provided reasonable suspicion that appellant was committing criminal trespass, in violation of R.C.2911.21(A)(2), which states, in pertinent part, that "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain * * * purposes * * * when the offender knows he is in violation of any such restriction or is reckless in that regard[.]" Thus, reasonable suspicion existed that appellant exceeded his privilege to remain on the fairgrounds by attempting to sell tickets that the fair provided free to fairgoers.
 {¶ 32} In light of the above, we need not address whether reasonable suspicion existed that appellant violated "peddler" license requirements in the Columbus City Code, even though such a violation would have constituted a misdemeanor. See Columbus City Code 523.99. Neither appellant nor appellee addresses whether the code pertains to a "peddler" on the fairgrounds, and the record lacks sufficient information for us to decide the issue.
 {¶ 33} Additionally, we recognize that the crimes against Juriga constituted misdemeanors. Specifically, the amount that appellant sought from Juriga was less than $500, making the theft by deception against Juriga a first-degree misdemeanor. R.C. 2913.02(B)(2). Likewise, criminal trespass is a fourth-degree misdemeanor, pursuant to R.C. 2911.21(D), and a violation of R.C. 1711.12 is an unclassified misdemeanor, pursuant to R.C. 1711.99. Acknowledging these completed misdemeanors as to Juriga, we note that the United States Supreme Court has not decided on whether a law enforcement officer may stop a person under Terry to investigate a past misdemeanor that a suspect did not commit in the officer's presence.United States v. Hensley (1985), 469 U.S. 221, 229. Thus, "[t]here is some question whether a stop for any past crime not amounting to a felony is or should be permitted." United States v. Jegede (2003),294 F.Supp.2d 704, 708; cf. City of Devils Lake v. Lawrence (N.D. 2002), 639 N.W.2d 466, 472 (upholding a Terry stop for a completed disorderly conduct misdemeanor).
 {¶ 34} Nonetheless, we need not address whether Terry allowed Trooper Firmi to stop appellant for the completed misdemeanor offenses against Juriga. Juriga indicated that "[t]here's a guy out front trying to sell the tickets," thereby providing reasonable suspicion that appellant's crimes were ongoing. (Tr. at 30.) As noted above, Terry allows a law enforcement officer to stop an individual based on a reasonable suspicion that the person is committing or is about to commit a crime. Terry at 21. Terry allows such stops to enable law enforcement officers to engage in "effective crime prevention." Id. at 22. "[I]t is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id.; see, also, State v. Dreher (July 28, 1992), Highland App. No. 786 (noting that "[c]rime prevention is one of the preeminent rationales for upholding Terry stops"). Accordingly,Terry allowed Trooper Firmi to stop appellant to investigate his activities at the fair.
 {¶ 35} We further conclude that Terry did not require Trooper Firmi to witness appellant's activity before stopping him. Rather, the trooper properly relied on a tip from Juriga, an identified informant. An identified informant's tip that possesses "a high degree of credibility and value" establishes reasonable suspicion "without independent police corroboration." Maumee v. Weisner (1999), 87 Ohio St.3d 295, 302-303.
 {¶ 36} Here, Juriga's tip possessed "a high degree of credibility and value." Juriga personally encountered appellant's activity and informed Trooper Firmi of the activity. "`[A] tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge[.]'"Weisner at 301, quoting State v. Jackson (Mar. 4, 1999), Montgomery App. No. 17226. Likewise, Juriga was prompt in providing the information to the trooper. "This immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory." Weisner at 302.
 {¶ 37} In addition to Juriga's tip, Trooper Firmi obtained reasonable suspicion of appellant's criminal activity through appellant's attempt to walk away as the trooper stepped outside. "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v.Wardlow (2000), 528 U.S. 119, 124.
 {¶ 38} We also conclude that Trooper Firmi did not violate theFourth Amendment when he asked appellant for identification during the stop. "[I]t is well established that an officer may ask a suspect to identify himself in the course of a Terry stop[.]" Hiibel v. Sixth Judicial Dist.Court (2004), 542 U.S. 177, 124 S.Ct. 2451, 2458. "The request for identity has an immediate relation to the purpose, rationale, and practical demands of a Terry stop." Id. at 2459. Indeed, like here, "[k]nowledge of identity may inform an officer that a suspect is wanted for another offense[.]" Id. at 2458. Thus, pursuant to Hiibel, theFourth Amendment also allowed Trooper Firmi to obtain a warrant check on appellant after the trooper obtained appellant's identification.
 {¶ 39} Upon checking appellant's background for outstanding warrants, Trooper Firmi discovered that appellant had a valid felony warrant. Generally, law enforcement officers may arrest an individual on a valid warrant. State v. Groves (Feb. 23, 2000), Scioto App. No. 99 CA 2630. Thus, Trooper Firmi lawfully arrested appellant for the outstanding felony warrant.
 {¶ 40} A law enforcement officer may conduct a search incident to a lawful arrest under a well-established exception to the Fourth Amendment warrant requirement. Chimel v. California (1969), 395 U.S. 752, 762-763. In United States v. Robinson (1973), 414 U.S. 218, 235, the United States Supreme Court elaborated on the search incident to a lawful arrest:
* * * It is the fact of the lawful arrest which establishes the authority to search, and * * * in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a `reasonable' search under that Amendment.
 {¶ 41} In conducting a search incident to a lawful arrest, a law enforcement officer may search for weapons and contraband. State v.Ferman (1979), 58 Ohio St.2d 216, 219. Similarly, the search constitutes a "full search of the arrestee's person[.]" State v. Jones (1996),112 Ohio App.3d 206, 215, citing Robinson and Gustafson v. Florida
(1973), 414 U.S. 260; Groves. Thus, Trooper Firmi did not violate theFourth Amendment by searching appellant, including his pockets, incident to the arrest.
 {¶ 42} With Trooper Glennon's assistance, Trooper Firmi discovered the illicit photographs while searching appellant. As above, Trooper Firmi constitutionally obtained the photographs through an initial valid Terry
stop of appellant that subsequently ripened into a lawful arrest and culminated with a proper search incident to an arrest. Therefore, we conclude that the trial court did not err by denying appellant's motion to suppress. Accordingly, we overrule appellant's first assignment of error.
 {¶ 43} In his second assignment of error, appellant contends that the trial court failed to make the requisite statutory findings when imposing consecutive sentences on appellant. Appellee concedes that the trial court failed to make such findings, and we agree.
 {¶ 44} R.C. 2929.14(E)(4) governs when trial courts may impose consecutive sentences and states, in part:
(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, * * * or was under post-release control for a prior offense.
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 45} A trial court must make specific findings under R.C.2929.14(E)(4) and state its reasons for making those findings. R.C.2929.19(B)(2)(c); State v. McDonald, Franklin App. No. 03AP-853, 2004-Ohio-2571, at ¶ 17. A trial court is required to provide these findings and reasons during the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 20. We must reverse and remand for resentencing consecutive sentences as "contrary to law" if the trial court failed to make the statutory findings and reasons. R.C. 2953.08(G)(1) and (G)(2)(b); State v. Knott, Athens App. No. 03CA30, 2004-Ohio-5745 at ¶ 37; State v. Scott, Franklin App. No. 01AP-801, 2002-Ohio-2251, at ¶ 13.
 {¶ 46} Here, as appellee concedes, the trial court failed to find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," as R.C. 2929.14(E)(4) requires. Likewise, the trial court failed to provide reasons behind the statutory findings that it did make. Accordingly, we sustain appellant's second assignment of error.
 {¶ 47} Appellant's third assignment of error concerns his multiple convictions for pandering sexually oriented matter involving a minor. R.C. 2907.322 prohibits pandering sexually oriented matter involving a minor and states, in pertinent part:
(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
* * *
(5) Knowingly * * * possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]
 {¶ 48} Appellant contends that his multiple convictions are based on insufficient evidence and are against the manifest weight of the evidence. In making this argument, appellant does not deny that he possessed sexually oriented matter involving a minor. Rather, appellant argues that his possession constituted one single animus and that appellee failed to prove that multiple offenses occurred. We disagree.
 {¶ 49} Although appellant frames the above issue as a question of insufficient evidence and manifest weight, the issue actually concerns whether the trial court was required to merge the separate verdicts at sentencing into one conviction. See State v. McGuire (1997),80 Ohio St.3d 390, 399 (noting that a conviction consists of a verdict and a sentence).
 {¶ 50} R.C. 2941.25(A) governs merger and states:
(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 51} If the elements of the crimes "`"correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import."'" State v.Rance (1999), 85 Ohio St.3d 632, 636, quoting State v. Jones (1997),78 Ohio St.3d 12, 13. Here, the multiple pandering obscenity counts are allied offenses, given that they are several counts of the same charge, R.C. 2907.322(A)(5). Although R.C. 2941.25(A) authorized appellee to indict and prosecute appellant on the multiple charges, the trial court could not render a judgment against appellant on multiple allied offenses of similar import unless appellant committed the crimes "with separate animus." See Rance at 638-639; R.C. 2941.25(B).
 {¶ 52} At the sentencing hearing, appellee agreed to merge Counts 5 through 12 into Count 1. Appellee reasoned that photographs on the merged counts "were all contained on one page." (Tr. at 122.) Such reasoning is unclear from the record. Upon reviewing the motion hearing exhibit that reflects the photographs that Trooper Firmi found on appellant, we recognize that the photographs that pertain to Counts 5 through 12 are contained on several different pages. In addition, Count 1 is not on the same page as any of the photographs for Counts 5 through 12. Appellee's reasoning is also unclear because images that pertain to Counts 1, 2, and 3 appear on the same page. Regardless, in accordance with appellant's concession, we review the multiple counts upon which appellant was convicted: Counts 1 through 4.
 {¶ 53} "[W]hen the same crime is committed against different victims, `a separate a[n]imus exists for each offense for purposes of determining whether multiple convictions are permissible.'" State v. McCartney,
Clinton App. No. CA2003-09-023, 2004-Ohio-4781, at ¶ 42, citing Statev. Yodice, Lake App. No. 2001-L-155, 2002-Ohio-7344, at ¶ 25. Minors that are depicted in sexually oriented matter are victimized through "sexual exploitation." See State v. Anderson, Washington App. No. 03CA3, 2004-Ohio-1033, at ¶ 97.
 {¶ 54} In McCartney, the Twelfth District Court of Appeals concluded that a trial court did not err by convicting a defendant on multiple counts of pandering sexually oriented matter involving a minor. The court reasoned that the defendant "victimized several different children by possessing graphic images of them involved in sexual abuse[.]" Id. at ¶ 42. Therefore, according to the court, the defendant's "possession of the several images constitute different and separate crimes[.]" Id.
 {¶ 55} Here, the children depicted in Counts 1 through 4 and the merged Counts 5 through 12 appear to be different individuals, and neither party purports otherwise. Thus, pursuant to McCartney, appellant victimized several different children and had a separate animus for Counts 1 through 4. See McCartney at ¶ 42.
 {¶ 56} We may deduce appellant's separate animus for Counts 1 through 4 even assuming some of the photographs may be of identical children. The photographs depict children in separate positions and against different backgrounds. In State v. Douse (Nov. 29, 2001), Cuyahoga App. No. 79318, the Eighth District Court of Appeals concluded that a defendant had a separate animus to commit crimes against one child by taking separate photographs of the child in different locations, backgrounds, and positions. Likewise, here, appellant possessed distinct graphic images that effectively provided separate sexual exploitation.
 {¶ 57} Accordingly, the trial court did not err by entering a judgment against appellant on multiple counts of pandering sexually oriented matter involving a minor. As such, we overrule appellant's third assignment of error.
 {¶ 58} In his fourth assignment of error, appellant contends that the trial court could not impose more than the minimum authorized sentence on appellant's convictions without appellant admitting to or the jury finding the statutory factors that would allow for non-minimum, consecutive sentences. In support, appellant relies on Blakely v. Washington (2004), U.S., 124 S.Ct. 2531, and Apprendi v. New Jersey (2000), 530 U.S. 466. InApprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Otherwise, the sentence violates a defendant's Sixth Amendment right to a jury trial and due process guarantees of the Fifth and Fourteenth Amendments. Id. at 477-478, 497. In Blakely, the United States Supreme Court defined "statutory maximum for Apprendi purposes" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the juryverdict or admitted by the defendant." (Emphasis sic.) Blakely at 2537.
 {¶ 59} We previously held that Ohio's felony sentencing guidelines do not "encroach upon the traditional and constitutionality required role of the jury" and do not infringe on a defendant's rights to a jury trial or due process. State v. Abdul-Mumin, Franklin App. No. 04AP-485, 2005-Ohio-522, ¶ 12, 29. Thus, we concluded that Apprendi and Blakely do not preclude the trial court from issuing a non-minimum sentence in accordance with Ohio's sentencing guidelines. Id. at ¶ 29. Additionally, we concluded that Apprendi and Blakely do not apply to consecutive sentences. Id. at ¶ 30.
 {¶ 60} Nonetheless, we already deemed appellant's sentence void because the trial court failed to follow the sentencing guidelines when imposing consecutive sentences. See State v. Beasley (1984),14 Ohio St.3d 74, 75 (noting that "[a]ny attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void"). Thus, the trial court will re-sentence appellant "`as if no prior attempt to sentence had been made.'" See Statev. Washington (July 17, 2001), Franklin App. No. 00AP-1077, quoting Statev. Thomas (1992), 80 Ohio App.3d 452, 458. Accordingly, appellant's fourth assignment of error is moot and we need not address it further. App.R. 12(A)(1)(c).
 {¶ 61} In summary, we sustain appellant's second assignment of error, overrule appellant's first and third assignments of error, and render moot appellant's fourth assignment of error. Accordingly, we affirm the trial court's judgment in part and reverse the judgment in part, and we remand this cause to the Franklin County Court of Common Pleas for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
Klatt and McGrath, JJ., concur.