The STATE of Ohio, Appellee,

v.

AGNER, Appellant.

[Cite as *State v. Agner* (1999), 135 Ohio App.3d 286.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–99–08.

Decided Oct. 29, 1999.

*David E. Bowers,* Allen County Prosecuting Attorney, and *Jana Gutman,* Assistant Prosecuting Attorney, for appellee.

*Jon Paul Rion,* for appellant.

WALTERS, Judge.

Defendant–appellant, Jerry D. Agner, appeals a judgment of conviction and sentence from the Court of Common Pleas of Allen County rendered pursuant to a jury verdict of guilty on two counts of trafficking in drugs and one count of engaging in a pattern of corrupt activity. For the following reasons, we reverse the judgment as it relates to the corrupt-activity charge and vacate the maximum sentence imposed on the drug-trafficking convictions.

On September 17, 1998, the Allen County Grand Jury indicted appellant on three counts of trafficking in cocaine and one count of engaging in a pattern of corrupt activity, violations of R.C. 2925.03(A) and (C)(4)(d) and R.C. 2923.32(A)(1), respectively. Appellant pleaded not guilty to the charges, and the cause was eventually tried to a jury in January 1999, wherein the following facts were adduced.

In the summer of 1998, confidential informant Richard Davis agreed to assist the Lima/Allen County Drug Enforcement Agency by participating in controlled drug buys with appellant. On August 23, 1998, Greg Roberts, an officer with the agency, searched Davis, affixed a hidden microphone to him and gave him $600 to purchase a half-ounce of cocaine from appellant. Davis testified that after meeting appellant at his home in Lima, he drove with appellant to Gomer, where appellant owns a residence that he was in the process of restoring. Davis stated that he exchanged the $600 for the cocaine, which appellant kept stashed above a window under some insulation. After the transaction, Officer Roberts again searched Davis, finding the drugs, but not the money.

Similarly, on August 26, 1998, Davis participated in another controlled buy, this time purchasing a full ounce of cocaine from appellant. Officer Roberts supplied Davis with $1,200, searched him, and affixed recording equipment to him before he had any contact with appellant. Davis then arrived at appellant's home in Lima, where appellant produced an ounce of cocaine from behind an outdoor electric meter. Again, Officer Roberts met with Davis after the transaction, searched him, located the drugs, and noted that the money was gone.

After hearing this evidence, the jury returned guilty verdicts on two of the trafficking charges and the corrupt activity charge. Although there was further testimony concerning a third drug buy on September 2, 1998, the jury found appellant not guilty of that charge. Thereafter, the court sentenced appellant to five years on each trafficking conviction and ten years on the corrupt-activity charge; all counts were ordered to run consecutively, for a total of twenty years. Appellant then filed this timely appeal, wherein he asserts four assignments of error for our review and consideration.

### Assignment of Error I

"The evidence was insufficient to support the conviction because the state failed to show that Appellant was associated with an 'enterprise'; accordingly, appellant's Rule 29 motions should have been granted."

In Count Four of the indictment, appellant was charged with engaging in a pattern of corrupt activity, a violation of R.C. 2923.31, part of the Ohio Racketeer Influenced and Corrupt Organizations ("RICO") statute. The following provisions of the statute are relevant for purposes of this appeal:

"No person *employed by, or associated with, any enterprise* shall conduct or participate in, directly or indirectly, the affairs of *the enterprise* through a pattern of corrupt activity * * *." (Emphasis added.) R.C. 2923.32(A)(1).

R.C. 2923.31(C) states:

" 'Enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises."

R.C. 2923.31(I) states:

" 'Corrupt activity' means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:

" * * *

"(2) Conduct constituting any of the following:

" * * *

"(c) Any violation of section * * * 2925.03 [trafficking in drugs] * * *, when the * * * value of the contraband or other property illegally possessed, sold, or purchased in the violation [or combination of violations] exceeds five hundred dollars."

Finally, R.C. 2923.31(E) states:

" 'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

In reviewing a trial court's decision to deny a motion for acquittal made pursuant to Crim.R. 29, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Therefore, the analysis for sufficiency of the evidence focuses on adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.

In this assignment of error, appellant complains that the trial court erred in failing to sustain his motion for acquittal on the charge of engaging in a pattern of corrupt activity because the state failed to produce any evidence tending to show the existence of an enterprise. The state of Ohio maintains that the evidence regarding the drug sales to Richard Davis was sufficient proof of an enterprise. More specifically, the state argues that because the definition of enterprise includes an "individual," an entire enterprise could consist of a lone drug dealer with nothing more. For the following reasons, we disagree with the

state's contention and find that the evidence herein is insufficient to demonstrate an enterprise.

First, although we acknowledge that the definition of enterprise includes an individual or sole proprietorship, we also find it equally significant that the crime of engaging in a pattern of corrupt activity requires that *the offender be employed by or associated with* such an entity. For example, in *State v. Hill* (Dec. 31, 1990), Stark App. No. CA–8094, unreported, 1990 WL 237485, the Fifth District Court of Appeals held that the evidence demonstrated an enterprise, in part because the offender in that case used his business, a local drinking establishment and a sole proprietorship, as the location from which he conducted the drug trafficking activities. In contrast, the evidence in this case fails to show that appellant was associated with any entity other than himself. If we were to adopt a reading of the RICO statute as broad as the state of Ohio urges, it is apparent that any defendant who committed the requisite underlying offenses could additionally be convicted of engaging in a pattern of corrupt activity.

Moreover, the state of Ohio also cites *Hill* for the proposition that "[t]he network or enterprise need not be explicit as long as its existence can plausibly be inferred from the interdependence of activities and persons involved." *Hill* at *3, citing *United States v. Ruiz* (C.A.1, 1990), 905 F.2d 499; *United States v. Flaherty* (C.A.1, 1981), 668 F.2d 566. In making this statement, the *Hill* court relied on the state's evidence that "cocaine cannot be grown in the United States * * *. Cocaine is grown only in South America, where it is processed into a powder form * * * [and] then brought into this country, where it is made into crack cocaine." *Id.* Thus, the court found that the jury could infer from the evidence presented that the offender in that case could not have produced the drugs for sale on his own, and was therefore necessarily participating in a larger enterprise.

Likewise, the state of Ohio argues here that the jury could have inferred that Jerry Agner, as a cocaine dealer, was a member of a larger drug enterprise. However, the evidence in this case is distinguishable from the evidence offered in *Hill.* Here, the prosecution did not provide the jury with any evidence describing the origin of cocaine and the manner in which it must be grown and produced, information from which the jury might make this inference. Therefore, the jury could not have reasonably made such a considerable inference from the evidence that was presented.

Based upon the foregoing reasons, appellant's first assignment of error is sustained. As a result, the RICO conviction and accompanying sentence must be vacated.

Assignment of Error II

"The trial court committed prejudicial error when it admitted evidence that appellant sold drugs on occasions not covered in the indictment."

Appellant argues that the trial court erred in allowing the prosecutor to call Jeff Austin, an inmate at the North Central Correctional Institution, to testify on rebuttal that he had purchased large quantities of drugs from appellant on numerous previous occasions. We are not persuaded.

Evid.R. 404(B) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Similarly, R.C. 2945.59 allows for the admissibility of any act taken by the defendant that would tend to show "motive or intent, the absence of mistake or accident * * * or the defendant's scheme, plan, or system."

■ Based upon the language contained in these rules, coupled with the circumstances that evolved at trial, we agree with appellant's assertion that Jeff Austin's testimony does not fit within the exceptions contained in Evid.R. 404(B) or R.C. 2945.59. However, we are convinced that the testimony in question was properly admitted under a different exception to the evidentiary rules.

■ Appellant also asserts that Jeff Austin's testimony was in direct violation of Evid.R. 608(B), which states that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence." This rule was construed by the Supreme Court of Ohio in State v. Kamel (1984), 12 Ohio St.3d 306, 12 OBR 378, 466 N.E.2d 860, syllabus, wherein the court held that, in general, "a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid.R. 608(B)." In applying the rule to that case, the court held that the trial court committed prejudicial error by admitting rebuttal evidence to impeach the defendants' answers regarding past misconduct that were elicited by the state on cross-examination. Although Kamel stands for the general rule, we find that this case fits within a recognized exception.

In fact, we find the instant matter analogous to the circumstances set forth in our previous opinion of State v. Banks (1991), 71 Ohio App.3d 214, 593 N.E.2d 346. In Banks, this court made a clear distinction between the circumstances

described in *Kamel* and a situation where the accused opens the door by electing to raise the issue of the lack of prior misconduct in his case in chief. Accordingly, we stated that when the offender introduces the issue as part of his defense, the state is entitled to introduce rebuttal testimony to impeach that evidence. Our holding was based upon the reasoning that the state should not be precluded from rebutting such testimony "simply because it might tend to further establish the elements of the crime charged." *Id.* at 220, 593 N.E.2d 346, 349, citing *Holt v. State* (1923), 107 Ohio St. 307, 140 N.E. 349.

In this case, appellant chose to interject evidence about the absence of past drug activity into his case in chief. For instance, defense witness, Carrie Nungester, stated the following on direct examination:

"Q: How long have you known Jerry?

"A: Five years.

"Q: And, have you been dating him for about that time?

"A: Yes.

"Q: And, have you ever known Jerry to use drugs?

"A: Never. Not even smoke cigarettes or drink alcohol.

"Q: Have you ever known him to sell drugs?

"A: No."

In addition to this testimony, the defense also called appellant's long-time friend William McDonnell to the stand. In response to defense counsel's questioning on direct, McDonnell stated the following:

"Q: You've known Jerry Agner for how long?

"A: Oh, probably twelve, thirteen years.

"Q: You a friend of his?

"A: Yes.

" * * *

"Q: Have you ever known Jerry to use, sell, or possess cocaine?

"A: No.

"Q: Have you ever known Jerry to use, sell, or possess marijuana?

"A: No."

It is clear that part of defense counsel's strategy was to paint appellant as a person who never had any involvement in the sale of drugs. Thus, pursuant to *Banks*, Jeff Austin's testimony was properly admitted as an exception to the general rule set forth in Evid.R. 608(B) and *Kamel, supra.*

■ Appellant finally contends that the trial court erred in failing to give the jury a cautioning instruction that Jeff Austin's testimony regarding prior drug sales does not prove that the defendant committed the offenses. Appellant's attorney never requested the court to provide this instruction, nor did he object to the general charge on the basis that it was missing. Thus, we find that this issue has not been properly preserved for appeal.

■ Accordingly, any review of this issue must be conducted under a plain error analysis. It is well established that plain error does not occur unless, but for the alleged mistake, the outcome of the trial would clearly have been otherwise. *State v. Wickline* (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 920. In light of the overwhelming evidence of appellant's guilt on the two trafficking charges on which he was ultimately convicted, we do not find that the failure to provide the jury with a limiting instruction as to Jeff Austin's testimony rises to the level of plain error.

Appellant's second assignment of error is overruled.

### Assignment of Error III

"The trial court erred when it refused to grant appellant's motion for a mistrial based on the state's failure to comply with the discovery order."

■ As part of the investigation into appellant's drug activities, Officer Greg Roberts monitored and recorded the conversations between appellant and confidential informant Richard Davis during the controlled drug buys. Throughout the first day of trial, the prosecution elicited certain testimony from Officer Roberts concerning the August 23 incident. As a result, the state of Ohio introduced the tape recording of that transaction and played it for the jury.

Thereafter, appellant's attorney made a motion for mistrial outside the presence of the jury. The motion was based in part on the prosecution's refusal to provide the defense with copies of the tapes during the discovery process. The state opposed the motion, arguing that although copies were not provided, appellant and his attorney were afforded the opportunity to listen to the tapes as many times as they found necessary. Defense counsel then complained that the listening equipment supplied by the prosecution was of such poor quality that he could not hear or understand the majority of the recorded conversations until the day of trial, when the courthouse equipment, which apparently was of much better quality, revealed some damaging information previously unknown to appellant's attorney.

After considering both arguments, the court overruled the motion for mistrial. However, as a remedy to the alleged discovery violation, the court ordered the

prosecution to furnish the defense with copies of the tapes. Appellant now argues that the trial court erred in refusing to declare a mistrial.

It is well settled that the decision to declare a mistrial lies within the sound discretion of the trial court. *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900, 901–902. Therefore, an appellate court will not disturb a ruling on such a motion unless an abuse of discretion has been demonstrated. An abuse of discretion is defined as a judgment that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. Furthermore, trial courts should declare a mistrial only when it is no longer possible for the offender to enjoy a fair trial. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 8–9.

With that stated, we cannot conclude that the circumstances surrounding the audiotapes warranted a mistrial. This is especially true because this court was not provided with the two different machines on which defense counsel listened to the audiotapes. Thus, we are unable to compare the alleged variation in sound quality that prompted the motion in the first place. As a result, any assessment of whether the trial court's refusal to declare a mistrial was an abuse of discretion would be based on pure speculation.

Appellant's third assignment of error is overruled.

## Assignment of Error IV

"The trial court committed an abuse of discretion when it imposed the maximum sentence because the court relied on improper factors in doing so."

Due to our previous holding that appellant was erroneously convicted of engaging in a pattern of corrupt activity, the ten-year sentence imposed for that charge must be vacated. Accordingly, our analysis of this assignment of error will focus on the five-year sentences that the trial court ordered on each of the two remaining trafficking convictions, which were classified as third-degree felonies.

Although appellant's assignment of error essentially asserts that the court erroneously relied on the effect that drug trafficking has on the community to impose sentence, we have chosen to address a separate but related issue first. Indeed, we are compelled initially to point out that appellant's sentence must be vacated due to the trial court's failure to comply with certain statutory requirements and the mandates outlined in the recent Ohio Supreme Court decision of *State v. Edmonson* (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.

R.C. 2929.14(A)(3) provides that the maximum prison term for a third-degree felony is five years. However, in order to impose the maximum sentence on an offender who has previously served a prison term, as in this case, the court must

make various findings. In particular, the trial court "may impose the longest term authorized for the offense * * * only upon offenders who committed the worst forms of the offense * * * [or] who pose the greatest likelihood of committing future crimes." R.C. 2929.14(C). R.C. 2929.19(B)(2)(d) further provides that a court must state its reasons for imposing the maximum term at the sentencing hearing. Moreover, according to *Edmonson*, a maximum sentence is not lawful unless the record "reflect[s] that the trial court imposed the * * * sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." *Id.*, 86 Ohio St.3d at 329, 715 N.E.2d at 141.

Even though several remarks made by the trial court during the sentencing hearing could be construed to support a finding that appellant committed one of the worst forms of the offense or that he posed the greatest likelihood of recidivism, the court did not specify these reasons as its grounds for imposing the maximum sentence. See *Id.* at 328, 715 N.E.2d at 134–135. Likewise, since the trial court failed to make these required findings, it follows that the court did not state its particular reasons for imposing the maximum sentence, as mandated by R.C. 2929.19. Therefore, we conclude that the maximum sentence must be vacated and appellant must be resentenced. In addition, the trial court's decision to impose consecutive sentences was also not in compliance with the relevant statutes or *Edmonson, supra.*

 With that stated, we now address the issue actually raised by appellant's assignment of error, which is that the trial court impermissibly relied on the effect that drugs have on the community when making its sentencing determination. The court admonished appellant about the physical and emotional injuries suffered by persons who become involved with drugs, including former customers Richard Davis and Jeff Austin. We are not convinced that that a consideration was improper, since the record supports the court's conclusions that appellant's drug sales have led to injury.

Appellant's fourth assignment of error is sustained.

Having found error prejudicial to the appellant herein in the particulars assigned and argued, we hereby reverse the judgment of the trial court insofar as it relates to the RICO conviction. Additionally, the sentence imposed for all charges is vacated, and appellant is to be resentenced on the trafficking convictions in accordance with this opinion.

*Judgment reversed in part,*
*affirmed in part*
*and sentence vacated.*

THOMAS F. BRYANT, P.J., and HADLEY, J., concur.