[Cite as *State v. Malone*, 2016-Ohio-5556.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE-
    CROSS-APPELLANT,                       CASE NO. 9-15-42

    v.

LANE FRANKLIN MALONE,

                                        O P I N I O N

    DEFENDANT-APPELLANT-
    CROSS-APPELLEE.

---

Appeal from Marion County Common Pleas Court
Trial Court No. 2015CR0153

Judgment Affirmed

Date of Decision: August 29, 2016

---

APPEARANCES:

    *Nathan D. Witkin* for Appellant

    *Brent W. Yager* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant/cross-appellee, Lane Franklin Malone ("Malone"), appeals the October 22, 2015 judgment of the Marion County Court of Common Pleas journalizing his conviction by a jury on seventeen counts of theft, and sentencing him to serve a six-month prison term and a period of five years of community control sanctions. The trial court ordered that the period of community control would be "tolled" until after Malone's completion of the six-month prison term. On appeal, Malone argues that the trial court lacked the authority to structure his sentence in this manner. The State also asserts a cross-appeal arguing that the trial court erred in granting Malone's Crim.R. 29 motion for acquittal on one count alleging the offense of engaging in a pattern of corrupt activity.

*Statement of the Case*

{¶2} On April 9, 2015, the Marion County Grand Jury indicted Malone on one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), a felony of the second degree; nine counts of theft by deception, in violation of R.C. 2913.02(A)(2), felonies of the fourth and fifth degrees; and nine counts of theft beyond the scope of consent, in violation of R.C. 2913.02(A)(3), felonies of the fourth and fifth degrees. The charges arose from Malone, in association with his business Frank's Roofing, Inc., arranging to complete nine roofing and/or construction jobs, taking substantial down payments from the

victims, and then failing to perform the work. The indictment alleged that the down payments ranged from $1,600.00 to $10,080.00, and that six of the theft offenses involved elderly victims. Malone subsequently pleaded not guilty to the charges.

{¶3} On August 13, 2015, the State filed a twenty-count superseding indictment to list an additional count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), a felony of the second degree, to the nineteen charges set forth in the previous indictment. The superseding indictment specified that the first count of engaging in a pattern of corrupt activity alleged that "Malone being associated with an enterprise, namely Frank's Roofing, Inc. and/or Frank's Roofing, did conduct or pursue directly or indirectly, the affairs of the enterprise thru [sic] patterns of corrupt activity being in violation of O.R.C. sections, R.C. 2913.02(A)(2) and R.C. 2913.02(A)(3)." (Doc. No. 25 at p. 1). The second count of engaging in a pattern of corrupt activity in the superseding indictment alleged that "Malone being associated with an enterprise, namely in association of persons in fact consisting of Lane Franklin Malone and Patricia L. Goings aka Patricia L. Malone, did conduct or pursue directly or indirectly, the affairs of the enterprise thru [sic] patterns of corrupt activity being in violation of O.R.C. sections, R.C. 2913.02(A)(2) and R.C. 2913.02(A)(3)." (Id. at p. 4).

{¶4} On September 29, 2015, the case proceeded to a three-day jury trial on all twenty counts listed in the superseding indictment. At the close of the State's

case, the defense moved for a Crim.R. 29 motion for acquittal on both engaging in a pattern of corrupt activity counts and one theft count. After hearing the parties' arguments on the issues raised, the trial court granted the defendant's motion for acquittal on Counts One and Two (engaging in a pattern of corrupt activity) and Count Seventeen (theft beyond the scope of consent). The trial preceded on the remaining seventeen theft counts and the jury found Malone guilty on all counts.

{¶5} On October 20, 2015, Malone appeared before the trial court for sentencing. In its October 22, 2015 Judgment Entry, the trial court dismissed Counts One, Two, and Seventeen based upon its prior ruling on the defense's Crim.R. 29 motion for acquittal, and determined that the theft counts from each incident were allied offenses of similar import which merged for the purposes of sentencing. The State elected to proceed with sentencing on the nine theft by deception counts. The trial court imposed a six-month prison term for Counts Fourteen and Twenty, due to the fact that Malone was on bond at the time he took the victim's down payments, and ordered that the prison terms be served concurrently. The trial court further concluded that the remaining seven counts of theft required the imposition of community control sanctions and sentenced Malone to a period of five years of community control sanctions on Counts Four, Six, Eight, Ten, Twelve, Sixteen, and Eighteen, with each term of community control sanctions to be served concurrently. The trial court specifically ordered that "the Defendant's

term of community control sanctions shall be tolled until he is released from prison on Counts 14 and 20." (Doc. No. 165 at 5).

### 1. *Malone's Appeal*

**{¶6}** Malone subsequently filed this appeal, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT IMPERMISSIBLY ORDERED COMMUNITY CONTROL SANCTIONS TO BE SERVED CONCURRENTLY [SIC] TO A TERM OF IMPRISONMENT.**

### ASSIGNMENT OF ERROR NO. II

**IN ORDER TO IMPOSE BOTH COMMUNITY CONTROL SANCTIONS AND IMPRISONMENT, THE TRIAL COURT IMPERMISSIBLY TOLLED COMMUNITY CONTROL SANCTIONS WITHOUT THERE BEING A COMMISSION OF AN OFFENSE UNDER COMMUNITY CONTROL AS REQUIRED BY R.C. 2929.15(A)(1).**

### ASSIGNMENT OF ERROR NO. III

**IN ORDER TO IMPOSE COMMUNITY CONTROL SANCTIONS AND IMPRISONMENT, THE TRIAL COURT EFFECTIVELY ORDERED A TERM OF COMMUNITY CONTROL SANCTIONS TO BE SERVED CONSECUTIVELY TO A TERM OF IMPRISONMENT WITHOUT MAKING REQUIRED FINDINGS FOR CONSECUTIVE SENTENCES UNDER R.C. 2929.14(C)(4).**

#### *Malone's Assignments of Error I, II, & III*

**{¶7}** For ease of discussion, we elect to discuss Malone's assignments of error together.

{¶8} On appeal, Malone challenges his sentence claiming that the trial court lacked the authority to: (1) order a period of community control sanctions to be served consecutive to a prison term; (2) order a period of community control sanctions to be "tolled" until the completion of a prison term; and (3) order a period of community control sanctions to be served after a prison sentence without making the findings for consecutive prison terms under R.C. 2929.14(C)(4).

*Consecutive Sentences*

{¶9} The basic tenet of Malone's position is his assertion that the trial court impermissibly sentenced him to both a term of imprisonment and a term of community control sanctions on his convictions for nine counts of theft. Malone relies on numerous cases, including several from this Court, purporting to support this premise. However, Malone's reliance on these cases is misplaced because they stand for the proposition that a sentencing court is without authority to impose both a prison term *and* community control sanctions for a conviction *on a single count*. *See e.g.*, *State v. Hartman,* 3d Dist. Van Wert No. 15-10-11, 2012-Ohio-874, ¶ 7 (stating that the current felony sentencing statutes require trial courts to impose either a prison term or community control sanctions on each count; *State v. Williams*, 3d Dist. No. 5-10-02, 2011-Ohio-995, ¶ 17 ("The sentence imposed is either a specific term of imprisonment on each count, or a specific term of community control on each count."); *State v. Jacobs*, 189 Ohio App.3d 283, 2010-

Ohio-4010, ¶ 5 (8th. Dist.) ("[T]he sentencing statute does not allow a trial court to impose *both* a prison sentence and community control for the same offense.")

{¶10} In the case sub judice, the trial court did not impose a term of imprisonment and a term of community control sanctions on a single count. Rather, the trial court imposed separate six-month prison terms on two counts and a period of community control sanctions on each of the remaining seven counts. Thus, the trial court imposed *either* a prison term *or* a term of community control sanctions on each of the nine counts, which the cases cited by Malone clearly hold that the trial court is authorized to do.

{¶11} In addressing Malone's contention that the trial court erroneously structured his sentence by ordering the period of community control sanctions to commence after the termination of his prison sentence, we note that R.C. 2929.13(A) generally grants a trial court broad discretion in fashioning the appropriate felony sentence.

> **Except as provided in division (E), (F), or (G) of this section and unless a specific sanction is required to be imposed or is precluded from being imposed pursuant to law, a court that imposes a sentence upon an offender for a felony** *may impose any sanction or combination of sanctions on the offender that are provided in sections 2929.14 to 2929.18 of the Revised Code.*

(Emphasis added). In addition, there is nothing restricting the trial court's authority to order an offender to serve a period of community control sanctions after the

-7-

completion of a prison term for a separate offense in R.C. 2929.15, the statute governing community control sanctions in felony sentencing.[1]

{¶12} We recognize that other appellate districts have also held that, when imposing sentences for separate offenses, a trial court is permitted to order a period of community control sanctions for one offense to run consecutive to a prison term imposed for another offense. *See e.g.*, *State v. Leedy*, 4th Dist. Meigs No. 13CA7, 2015-Ohio-1718, ¶¶ 8-9; *State v. Martin*, 8th Dist. Cuyahoga No. 2014-Ohio-3913, ¶ 9; *State v. LaSalla*, 8th Dist. Cuyahoga No. 99424, 2013-Ohio-4596, ¶ 34; *State v. Heidrick*, 8th Dist. Cuyahoga No. 96822, 2012-Ohio-1739, ¶ 8; *State v. Blunk*, 8th Dist. Cuyahoga No. 84304, 2004-Ohio-6910; *State v. O'Connor*, 5th Dist. Delaware No. 04CAA04-028, 2004-Ohio-6752, ¶ 28-29; *State v. Kinder*, 5th Dist. Delaware No. 03CAA12075, 2004-Ohio-4340.[2]

---

[1] Notably, the only mention in the statute of this issue is the specific circumstance of a third or fourth degree OVI offense, in which the statute permits a trial court to impose a period of community control sanctions in addition to a mandatory prison term. However, the statute clearly informs the sentencing court that "the offender shall serve all of the prison terms so imposed prior to serving the community control sanction." R.C. 2929.15(A)(1). While this precise scenario is not implicated in this case, we nevertheless find this language instructive as to what is considered permissible under the statutory authority granting the sentencing court discretion to structure a felony sentence for multiple offenses.

[2] We acknowledge that another decision of the Eighth Appellate District recently disagreed with these cases and held that a sentencing court does not have the authority to order a period of community control sanctions on one count to be served consecutively to a prison term imposed on another. *See State v. Anderson*, 8th Dist. Cuyahoga No. 102427, 2015-Ohio-5136. However, as confirmed by the majority opinion in *Anderson*, its holding directly opposed the precedent set by previous decisions of that Court and, thus, creates a conflict within that appellate district on this issue. Notably, the Supreme Court of Ohio accepted a discretionary appeal of *Anderson* and remanded the cause to the court of appeals "for consideration of the matter en banc in accordance with that court's order filed March 3, 2016." *State v. Anderson*, 145 Ohio St. 3d 1457, 2016-Ohio-2807.

**{¶13}** In *State v. May*, the Eighth Appellate District addressed an offender's contention that when community control sanctions are imposed they must commence immediately upon sentencing and cannot be "tolled" and ordered to be served consecutive to the prison term imposed for a separate offense. 8th Dist. Cuyahoga No. 97354, 2012-Ohio-2766, ¶ 26. The Court in *May* observed that:

> **If defendant's interpretation is correct, the trial court's imposition of community control sanctions would be pointless because it would expire prior to his release from prison. In practicality, this would bind trial courts in many cases to imposing prison sentences on all counts in multiple conviction cases where some period of incarceration is deemed necessary in order to accomplish the purposes of sentences. It would hamper the trial court's ability to fashion less restrictive sentencing alternatives.**

*Id.* We find the reasoning set forth by the court in *May* and the many other cases deciding this issue in a similar manner to be persuasive, especially in light of the fact that Malone has failed to direct us to any statutory authority expressly restricting a sentencing court's discretion in fashioning a felony sentence for multiple offenses in this way. Accordingly, we find no reversible error in the trial court's decision to order the period of community control sanctions to be served consecutive to the six-month prison term. Malone's first and second assignments of error are therefore overruled.[3]

---

[3] Even though the trial court used the term "toll" in the sentencing entry, it is clear by operation of the sentence that the period of community control sanctions was ordered to run "consecutive" to the prison term despite the trial court's choice of wording. In order to avoid confusion and to provide the clearest form of notification, the better practice would be to simply use the word "consecutive."

*Statutory Findings*

**{¶14}** In his third assignment of error, Malone argues that the trial court was required to make the statutory findings listed in R.C. 2929.14(C)(4) prior to imposing consecutive sentences. At least one other appellate district has addressed this issue and determined that the statutory findings in R.C. 2929.14(C)(4) do not apply when a period of community control sanctions is ordered to be served consecutive to a prison term.

> **R.C. 2929.14(C)(4) requires a trial court to make certain findings before "multiple prison terms are imposed on an offender for convictions of multiple offenses." The statute clearly states that the findings are required before a court imposes multiple prison terms. Here, the trial court imposed concurrent prison sentences for each of the separate drug trafficking counts in Case No. CR–13–578497–G and a community control sanction for the single count of possessing criminal tools in Case No. CR–13–573905. The community control sanction was ordered to run consecutive to the prison sentences. No prison terms were ordered to run consecutive; therefore, the trial court did not have to make finding pursuant to R.C. 2929.14(C)(4).**

*State v. Carswell*, 8th Dist. Cuyahoga Nos. 101313, 101314, 2015-Ohio-764, ¶ 9. Thus, we are not convinced by Malone's arguments that R.C. 2929.14(C)(4) mandates that findings be made prior to imposing the sentence in this case and we find no reason to deviate from the rationale set forth above by the court in *Carswell*. Accordingly, Malone's third assignment is overruled.

## 2. State's Cross-Appeal

{¶15} In the instant case, the State also filed a "Motion for Leave to Appeal" the trial court's decision granting Malone's Crim.R. 29 motion for acquittal on Count One, engaging in a pattern of corrupt activity, in which the State alleged that Malone committed the series of theft offenses while associating with an "enterprise"—to wit: "Frank's Roofing" and/or "Frank's Roofing, Inc." This Court granted the State's motion under R.C. 2945.67 and *State v. Bistricky*, which held that "a court of appeals has discretionary authority pursuant to R.C. 2945.67(A) to decide whether to review substantive law rulings made in a criminal case which results in a judgment of acquittal so long as the verdict itself is not appealed." 51 Ohio St.3d 157, 159 (1990). The State now asserts the following assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN GRANTING DEFENDANT'S MOTION FOR ACQUITTAL BY DETERMINING THAT THE DEFENDANT'S BUSINESS WAS NOT A SEPARATE ENTITY, AND THUS NOT AN "ENTERPRISE" WITH WHICH THE DEFENDANT COULD HAVE ASSOCIATED WITH FOR PURPOSES OF O.R.C. 2923.32(A)(1).**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN GRANTING DEFENDANT'S MOTION FOR ACQUITTAL BY DETERMINING THAT THE CANCELLATION OF A CORPORATION'S CHARTER BY**

**THE SECRETARY OF STATE RENDERED THE CORPORATION NON-EXISTENT AND THUS NOT CAPABLE OF BEING AN "ENTERPRISE" FOR PURPOSES OF O.R.C. 2923.32(A)(1).**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN GRANTING DEFENDANT'S MOTION FOR ACQUITTAL BY DETERMINING THAT AN ASSOCIATION BETWEEN A SOLE PROPRIETOR AND HIS BUSINESS IS INSUFFICIENT TO SATISFY THE ELEMENTS OF O.R.C. 2923.32(A)(1).**

*The State's Assignments of Error I, II, and III*

**{¶16}** On appeal, the State claims the trial court erred when it determined that Frank's Roofing, Inc. did not constitute an "enterprise" for the purposes of R.C. 2923.32(A)(1) and, therefore, that Malone could not be convicted of engaging in a pattern of corrupt activity as alleged in Count One.

**{¶17}** In the instant case, the trial court granted the Crim.R. 29 motion for acquittal made at the close of the State's case. Accordingly, it is necessary to review the evidence presented by the State which underpinned the trial court's substantive law rulings resulting in its judgment of acquittal.

*The State's Case*

**{¶18}** In its case-in-chief, the State presented the testimony of fifteen witnesses as well as numerous exhibits and financial documentation to establish that from April 2013 to September 2014 Malone entered into contracts to complete nine

roofing and/or residential construction jobs. In each instance, Malone met with the homeowner(s), assessed the job, and gave a detailed written quote on a "Contractor's Invoice" or "Contract Invoice" with the name "Frank's Roofing Inc." and the business address and phone number listed on the top of the form.[4] The homeowners gave a down payment of half the quoted amount. The contracts stated that work on the job was to begin in two to three weeks, weather permitting, and were signed by the homeowners and Malone. Malone's signature appeared on many of the contracts on a signature line reserved for "Rep. Frank's Roofing, Inc." or "Frank's Roofing." (State's Ex. 10, 11, 16, 24, 28, 29 and 34). The homeowners handed Malone checks for the down payments which were "paid to the order of Frank's Roofing Inc." and which were purportedly for the purchase of construction materials.[5] All but one of these checks were subsequently endorsed for deposit by either "Frank's Roofing Inc." or "Frank's Roofing" and deposited into a Huntington Bank account which was listed solely under the name "Frank's Roofing Incorporated."[6]

---

[4] The evidence indicates that "Frank's Roofing, Inc." was a registered corporation with the Ohio Secretary of State until its articles of incorporation were revoked in April 2011 for failure to pay taxes. (State's Ex. 60). The Initial Articles of Incorporation filed on November 1, 2006, revealed that Frank's Roofing Inc. was authorized to have 100 common shares outstanding with a value of one dollar per share. (State's Ex. 59 at 2). Malone was listed as the authorized representative, the sole director of the corporation, and the statutory agent. (Id. at 3-4).

[5] In one instance, Malone also accepted an insurance check paid to the homeowners for the down payment. The check was endorsed by "Frank's Roofing Inc." and deposited into the business account.

[6] The record demonstrates that Malone closed the long-standing Huntington Bank "Business Checking" account under the name "Frank's Roofing Incorporated" in March of 2014. This was the account that eight of the nine down payment checks were deposited into. In April of 2014, Malone then opened a new "Simply Checking" account at Fahey Banking Company under the name "Lane F. Malone, Jr. dba Frank's Roofing."

{¶19} Despite receiving these substantial down payments, ranging from $1,600.00 to $10,080.00, Malone never started work on the jobs. The homeowners each told a similar story of attempting contact to Malone by phone or in person at the business office when Malone failed to begin the job several weeks after the anticipated start date. The testimony indicated that Malone was evasive and non-responsive to their calls. Some homeowners spoke to a woman at the business office who provided them with excuses as to why the work had not begun, but also assured them that their project was next in line. Some of the homeowners were able to speak to Malone directly who gave them the same line of excuses and empty assurances. Eventually, the homeowners contacted law enforcement and charges were brought against Malone.

{¶20} After the State presented its case, the trial court granted Malone's Crim.R. 29 motion for acquittal on Count One, engaging in a pattern of corrupt activity. Specifically, the trial court stated the following reasoning to support its ruling.[7]

> **Now, with respect to the two RICO charges, you know, I'm gonna grant the Motion For Directed Verdict [sic], on those charges. Working through the three different entities that constitute the enterprise, the corporation had been cancelled, I think the argument is whether a cancelled corporation can be an enterprise.**

The last victim contracted with Frank's Roofing Inc. in September of 2014 and his check was the only one deposited into this subsequent account.

[7] The trial court granted the motion for acquittal on the two counts of engaging in a pattern of corrupt activity, an offense also referred to as RICO for its counterpart under federal law. The State is only appealing the trial court's ruling with respect to Count One. Therefore, we will not address the second count of engaging in a pattern of corrupt activity involving Patricia Goings aka Malone on appeal.

**You know, I think it's pretty much a sole proprietorship at that point. The sole proprietorship is just the Defendant. I mean, he is the sole—I mean, it's one in the same. You know, it's kind of hard to distinguish this from someone selling drugs or selling drugs and passing out a business card listing their name as Frank's Drug Dealer or Frank's Drug Supplier, whatever. I mean, it's all one entity.**

**\* \* \***

**You know, when I look at the—I think the significant cases for me, I mean out of the Third District, does make clear the State v. Agner case, 135 Ohio Appellate 3rd 286, that you have to have more than one individual. In fact, in that case they made a comment, if they followed the State's argument it would be apparent any Defendant that committed the requisite underlying offenses would be convicted of Engaging in a Pattern of Corrupt Activity.**

**The Supreme Court cases, I think, are probably more important. The Griffin case talks about that there has to be a common purpose, acting in concert. I understand that the whole—you can have illicit enterprise, you can have legitimate business, that's fine. But if all you have is one person that is engaged in any type of criminal activity, I don't think you have a RICO case. I think that language is—in the Stevens case, the Ohio Supreme Court decision, 139 Ohio State 3rd 247, they state the obvious intent of the General Assembly in enacting RICO statutes was to reduce the influence and power or [sic] organized crime in the state. If we just have one person engaging in criminal activity I don't know how we have organized crime. And I don't think it becomes organized crime because he has a business card at an office. You know, I don't think we distinguished on whether you're working out of your home or working out of an office or where you're working out of. You know, all the evidence has been it's one person.**

**So I will grant the Motion for Acquittal on Counts 1, 2, and 17. The other counts will proceed to the jury.**

(Tr. at 382-84).

*Discussion*

{¶21} The trial court essentially made two substantive legal rulings regarding the term "enterprise" as it is used in R.C. 2923.31 et seq.: (1) The trial court concluded as a matter of law that a business which has had its articles of incorporation revoked by the Ohio Secretary of State cannot be considered a "corporation" for purposes of the definition of an "enterprise" in R.C. 2923.31(C). Therefore, trial court presumed that because Frank's Roofing, Inc. was no longer a corporation in good standing it reverted to a sole proprietorship because Malone was the only person affiliated with the business; and (2) the trial court concluded that as a matter of law a sole proprietorship cannot constitute an "enterprise" under R.C. 2923.31(C) if there is only one person affiliated with the business.

{¶22} Initially, we note that the trial court did not cite any authority and we have found none to support its first legal conclusion that a corporation no longer in good standing could not be considered an "enterprise" under R.C. 2923.31 et seq. or that, under these circumstances, a previously legitimate "corporation" automatically reverted to a "sole proprietorship" within the meaning of those terms under the engaging in a pattern of corrupt activity statutes.

{¶23} Notwithstanding this fact, the trial court cited three cases to support its legal conclusion that a "person" cannot be employed by, or associated with, an

"enterprise" that is a sole proprietorship, if the "person" is the only member of the sole proprietorship. Notably, "R.C. 2923.32(A)(1) uses the singular word "person" to refer to one who engages in a pattern of corrupt activity." *State v. Stevens*, 139 Ohio St. 3d 247, 2014-Ohio-1932, ¶ 14; *see also* R.C. 2923.31(G) ("Person" means any person, as defined in section 1.59 of the Revised Code, and any governmental officer, employee, or entity).[8]

{¶24} First, the trial court cited this Court's decision in *State v. Agner*, 135 Ohio App.3d 286 (3d Dist. 1999). The defendant in *Agner* was convicted by a jury on two counts of trafficking in drugs and one count of engaging in a pattern of corrupt activity. *Id.* at 288. The evidence at trial established that a confidential informant working with law enforcement participated in controlled drug buys with the defendant who sold the informant cocaine. *Id.* at 289. The defendant appealed his conviction for engaging a pattern of corrupt activity claiming the State failed to prove he was associated with an "enterprise." *Id.* The State in *Agner* argued that the jury could have inferred the defendant was part of a larger drug enterprise solely because any drug sale must necessarily involve another individual as a supplier of the drugs, even though there was no evidence pertaining to such a supplier introduced at the *Agner* trial. *Id.* at 291. In sustaining the defendant's assignment of error, this Court stated "although we acknowledge that the definition of enterprise

---

[8] Section 1.59(C) of the Revised Code states " 'Person' includes an individual, corporation, business trust, estate, trust, partnership, and association."

includes an individual or sole proprietorship, we also find it equally significant that the crime of engaging in a pattern of corrupt activity requires that the *offender be employed by or associated with* such an entity." *Id*. at 291 (emphasis sic).

{¶25} This Court then discussed a case from the Fifth Appellate District, *State v. Hill*, in which that court found "the evidence demonstrated an enterprise, in part because the offender in that case used his business, a local drinking establishment and a sole proprietorship, as the location from which he conducted the drug trafficking activities" and found the facts in *Agner* distinguishable from the *Hill* case on that basis. *Id.*, citing *State v. Hill*, 5th Dist. Stark No. CA-8094 (1990). Specifically, the court in *Agner* stated that, "[i]n contrast [to *Hill*], the evidence in this case fails to show that appellant was associated with any entity other than himself." *Agner* at 291.

{¶26} In a subsequent case, *State v. Weiss*, we referred to the fact that "[i]n *Agner*, we held that an entire enterprise could not consist of a lone drug dealer *with nothing more* and the defendant's conviction of engaging in a pattern of corrupt activity was overturned." *State v. Weiss*, 3d Dist. Union No. 14-03-24, 2004-Ohio-1948, ¶ 29, citing *Agner* at 290 (emphasis added). We note that Malone relies on *Weiss* for the proposition that "a defendant could be convicted under R.C. 2923.32 so long as she was associated with other people in the enterprise." (Appt. Reply Brief at 4). However, this is a misstatement of our rationale in *Weiss* as that case

did not specifically address the sole proprietorship component of the "enterprise" definition in R.C. 2923.31(C). Rather, the court in *Weiss* discussed two individuals associating as an enterprise within the purview of the statute. Accordingly, the trial court's reliance on *Agner*, and Malone's reliance on *Weiss* for that matter, are both misplaced because here we do not have a situation involving a lone individual with nothing more. Rather, the facts in the instant case are more akin to the *Hill* case which involved an individual using and working in concert with his business entity to conduct a pattern of corrupt activity.

{¶27} The second case cited by the trial court, *State v. Griffin*, involved the Supreme Court of Ohio's review of a jury instruction given on the term "enterprise." *State v. Griffin*, 141 Ohio St. 3d 392, 2014-Ohio-4764 (2014). The jury instruction included verbatim the statutory definition of "enterprise" found in R.C. 2923.31(C), as well as the statutory language delineating the offense in R.C. 2923.32(A)(1). *Griffin* at ¶ 6. The defendant was jointly tried with another individual and both were convicted of an engaging in a pattern of corrupt activity comprised of drug-related offenses. *Griffin* at ¶ 14 (Lansinger, J. dissenting). The defendant claimed the jury instruction was inadequate because it did not incorporate concepts from federal case law "to convey that 'enterprise' requires that the people in the organization have acted in concert with a common purpose." *Id.* at ¶ 8.

{¶28} In the majority opinion, the Supreme Court found no flaw with the jury instruction as given by the trial court and opined "[w]e have no difficulty concluding that the concepts of 'common purpose' and 'acting in concert' are included in the concepts of 'associating with an enterprise' and 'conducting or participating in the affairs of that enterprise.' "  *Id.* at 10, quoting R.C. 2923.32(A)(1).  Thus, the majority opinion in *Griffin* found a recitation of the statutory definitions of "enterprise" and "pattern of corrupt activity" in a jury instruction, which also informs the jury that it has to find both elements beyond a reasonable doubt, was sufficient and not reversible error.

{¶29} The trial court relied on *Griffin* for the proposition that the implicit statutory concepts of "common purpose" and "acting in concert" presume that there must be more than one individual involved in the offense for the charge of engaging in a pattern of corrupt activity to survive a Crim.R. 29 motion for acquittal. However, there is no such statement made by the Supreme Court in the opinion, which leads us to believe the trial court's reliance on *Griffin* is misconstrued. Rather, the Supreme Court appears to be discussing these concepts as they apply to an "enterprise" consisting of an association-in-fact—i.e., a "group of persons associated in fact although not a legal entity," a component of the statutory definition not implicated by the facts in the instant case.  *See* R.C. 2923.31(C).

**{¶30}** The third and final case cited by the trial court is *State v. Stevens*, 139 Ohio St. 3d 252, 2014-Ohio-1932. In *Stevens*, the Supreme Court of Ohio considered the cases of two individuals involved in a "drug ring" and addressed whether the monetary threshold to obtain a conviction for engaging in a pattern of corrupt activity found in R.C. 2923.31(I)(2)(c) applied to the enterprise as a whole or to the individual's actions. *Id.* at ¶ 4, 6. The lead opinion in the plurality found R.C. 2923.31(I)(2)(c) ambiguous and applied the rule of lenity to determine that the monetary threshold applies only to each individual, and not to the enterprise as a whole.[9] *Id.* at ¶ 18.

**{¶31}** The trial court in the instant case cited *Stevens* for the comment in the lead opinion expounding "[t]he obvious intent of the General Assembly in enacting the RICO statutes was to reduce the influence and power of organized crime in the state." *Id.* at ¶ 16. The trial court relied on this statement in *Stevens* to conclude that "[i]f we just have one person engaging in criminal activity, I don't know how we have organized crime." (Tr. at 384).

**{¶32}** Despite its citation to these cases upon granting Malone's motion for acquittal, it is apparent that neither *Agner*, *Griffin*, nor *Stevens* support the trial court's substantive legal ruling that as a matter of law an individual using his

---

[9] There were three separately filed opinions in addition to the lead opinion in *Stevens*, with French, J. concurring in judgment only and writing separately, Kennedy, J. concurring in part and dissenting in part and joined by O'Donnell, J., and O'Connor, C.J. dissenting. All three separate opinions disagreed with the lead opinion's determination that the statute was ambiguous.

business entity to engage in a pattern of corrupt activity cannot satisfy the "enterprise" element of the offense. Moreover, in reviewing the statutory language, we find nothing to compel this result.

{¶33} The offense at issue in this case is delineated in R.C. 2923.32(A)(1) and states:

> **No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.**

The term "enterprise" is defined in R.C. 2923.31(C) and provides that:

> **"Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.**

The term "pattern of corrupt activity" is also statutorily defined in R.C. 2923.31(E):

> **"Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.**

Corrupt activity is defined in R.C. 2923.31(I) in relevant part as:

> **Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:**
> **\* \* \***
> **(2) Conduct constituting any of the following:**
> **\* \* \***
> **(c) Any violation of section \* \* \* 2913.02 \* \* \*of the Revised Code.**

-22-

**{¶34}** As noted by Justice Lansinger in her dissent in *Griffin* "[a]s currently written, the statute is very broad, and although it does not say exactly what an enterprise is, it tells us what it *includes*. It is something, either a legal entity or not a legal entity." *Griffin* at ¶ 17 (Lansinger, J. dissenting) (emphasis sic). *See State v. Beverly*, 143 Ohio St. 3d 258, 2015-Ohio-219, ¶ 8 (noting that "the definition of 'enterprise' is remarkably open-ended"), citing *State v. Boyle*, 556 U.S. 938 (observing that enumeration of included enterprises is obviously broad); *See also Stevens* at ¶ 58 (O'Connor dissenting) (noting that "we must be mindful that Congress provided specifically that the federal RICO statute be liberally construed to effectuate its remedial purposes"), citing *United States v. Sutton*, 642 F.2d 1001, 1008 (6th Cir.1980) (en banc), citing Pub.L. No. 91-452, Title IX, Section 904(a), 84 Stat. 947 (1970).

**{¶35}** The statutory definition clearly includes both a "sole proprietorship" and a "corporation" as an "enterprise." Nevertheless, the trial court determined as a matter of law that Frank's Roofing, Inc. could not be considered an "enterprise" under the statute because Malone was the only person found to have any evidence of criminal intent affiliated with Frank's Roofing, Inc. and the corporation was no longer in good standing at the time the offenses occurred. We acknowledge that two other appellate districts have narrowly construed R.C. 2923.31 et seq. to only permit a sole proprietorship to constitute an "enterprise" for purposes of the statute

if it "has at least one other employee" because it is then considered a " 'group of individuals associated in fact' and therefore constitutes an enterprise under R.C. 2923.31(C)." *See State v. Hicks*, 12th Dist. Butler No. 2003-Ohio-7210, ¶ 33; *State v. Post*, 6th Dist. Lucas No. L-95-153 (Sept. 20, 1996); *State v. Reimsnyder*, 6th Dist. Erie No. E-93-71 *11-12 (Dec. 30, 1994)(citing *State v. Hill*, *supra*, and noting a split in Ohio and federal courts on the issue).

**{¶36}** However, at least one other appellee district has come to the opposite conclusion. The Ninth Appellate District in *State v. Habash* rejected the defendant's suggestion that an "enterprise" must be a formal, structured organization and noted that "the legislature defined this term broadly to encompass even a single individual." *State v. Habash*, 9th Dist. Summit No. 17073 *6 (Jan. 31, 1996).

**{¶37}** The cases holding that an "enterprise" cannot consist of one person appear to disregard that the separate and distinct terms "individual," "sole proprietorship," and "group of persons associated in fact" are each included in the statutory definition of an "enterprise," and instead blend these terms to create a more restrictive construction of the term "sole proprietorship" under the statute. *See Hicks*, supra. However, the statutory language clearly gives equal consideration to each of these terms independently without qualification, and does not expressly prohibit the interpretation of an "enterprise" as consisting of only one individual. Therefore, we decline to adopt such a narrow construction of the statute as it is not

prescribed by the statutory language and is inconsistent with the authority mandating the statute be broadly construed to effectuate its remedial purposes.

**{¶38}** Regardless of whether Frank's Roofing, Inc. is considered a "corporation" or a "sole proprietorship" under R.C. 2923.31(C), the evidence in this case clearly demonstrates that Malone used his association with Frank's Roofing, Inc. to engage in a pattern of corrupt activity—i.e., to commit theft offenses of the victims' down payments. The State presented the "contract invoices" Malone used in each of the nine incidents which represented to the homeowners' that they were contracting with "Frank's Roofing Inc." Moreover, the homeowners testified to their beliefs that they were entering into a contract with Frank's Roofing, Inc. to complete the construction jobs on their homes. The homeowners wrote the checks for the down payments to "Frank's Roofing Inc." and their checks were endorsed by either "Frank's Roofing" or "Frank's Roofing Inc." upon deposit into a business account under the name of "Frank's Roofing, Inc."[10]

**{¶39}** Some of the homeowners specifically contacted Malone to receive a quote based upon his reputation as owner/employee of Frank's Roofing, Inc. For example, one of the victims stated that he hired Malone because Frank's Roofing,

---

[10] As previously mentioned all but one of the victims' checks were deposited into a Huntington Bank "Business Checking" account under the name "Frank's Roofing Incorporated, " which was closed in March of 2014. In April of 2014, Malone then opened a new "Simply Checking" account at Fahey Banking Company under the name "Lane F. Malone, Jr. dba Frank's Roofing." The last victim contracted with Frank's Roofing, Inc. in September of 2014 and his check was the only one deposited into this subsequent account.

Inc. had completed a partial roofing job at his office a few years prior to this incident. (Tr. at p. 271). After accepting their down payments, Malone consulted with a concrete contractor on one job and negotiated with insurance adjusters on two other jobs to get the claims submitted so that he could get paid. (Tr. at pp. 145, 162, 199). Malone also showed many of the homeowners samples of roofing shingles and told them to select a specific shingle style for their project. Malone represented to them that he would use the down payment to buy materials to begin work on the job. Frank's Roofing, Inc. also had a business office where at least one employee worked who answered the phones and who relayed knowledge of the job site schedule to the homeowners. Notably, it was at this office where one of the contracts in this case was signed and the down payment check was handed to the woman working in the office. (Tr. at p. 218).

{¶40} Each of these things was an indication to the homeowners that they were dealing with a legitimate and established business (which at one time was a corporation in good standing) and not a single individual. Thus, it is reasonable to infer that the homeowners only were willing to contract with Malone and give him substantial down payments to begin the projects because of his association and/or employment with Frank's Roofing, Inc. "The RICO laws were enacted to punish the enterprise and those controlling the enterprise, not the petty criminals." *Stevens*, 2014-Ohio-1932, ¶ 15. We therefore conclude that Frank's Roofing, Inc. satisfied

the definition and purpose of the term "enterprise" under R.C. 2923.31 et seq. Accordingly, we sustain the State's assignments of error to the extent that the trial court erred in rendering a substantive legal ruling that an individual using his business entity to engage in a pattern of corrupt activity cannot as a matter of law constitute an "enterprise" under the statutory scheme.

### *Conclusion*

{¶41} In sum, as to Malone's appeal we overrule his first, second, and third assignments of error and affirm the judgment entry of conviction and sentence. As to the State's cross-appeal, the State's first, second, and third assignments of error are sustained. However, notwithstanding the erroneous basis of the trial court's judgment on the issues raised in the State's appeal, the actual acquittal of Malone must be affirmed inasmuch as Malone cannot be twice put in jeopardy. *State v. Hamilton*, 97 Ohio App.3d 648 (3d Dist. 1994).

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jlr**

**ROGERS, J, concurring in part and dissenting in part.**

{¶42} I respectfully dissent from the majority's holding on Appellant's second and third assignments of error. Although assignment No. I is somewhat at

odds with the actual sentences imposed (to be served consecutively as opposed to concurrently), it is correctly overruled.  Each count requires a sentence of its own, and community control may be imposed on one count even when prison is imposed on another.

{¶43} We must first recognize that R. C.  2929.15(A)(1) clearly and unequivocally states that "[t]he duration of all community control sanctions imposed upon an offender under this division shall not exceed five years."  As imposed, the term of community control would extend beyond the five year limitation.

{¶44}  Further, there is no specific authority to impose community control on one count consecutively to a prison term on another count from the same indictment.

{¶45}  The problem arises when the trial court wishes to impose community control consecutive to a prison term.  There is no authority for a trial court to either delay the commencement of the term of community control or to toll its commencement under the circumstances of this case.

{¶46} The majority attempts to find support for its position in the fact that in OVI cases the statute specifically authorizes community control to follow imposition of a prison term.  Their logic fails for two reasons.  First, that result is specifically authorized on a single count of OVI, not on multiple counts from a single indictment.  Second, the fact that such a combined sentence is authorized in

one circumstance, implies that it may not be used in other circumstances. *See State v. Long*, 68 Ohio App.3d 663, 665 (9th Dist.1990), citing *Montgomery Cty. Bd. of Commrs. v. Pub. Util. Comm.*, 28 Ohio St.3d 171, 175 (1986) ("As a general rule of statutory construction, the specific mention of one thing implies the exclusion of another."). R.C. 2929.15(A)(1) includes an exhaustive list of situations where a trial court may impose a period of community control sanctions in addition to a mandatory prison term. The statute omits any mention of the type of punishment imposed in this case. Thus, we must presume that this type of punishment is not authorized.

{¶47} I would therefore sustain Appellant's second assignment of error, and based on that result, I would find the third assignment to be moot.

{¶48} I must further dissent as to the majority's holding on the State's assignments of error. I find it absurd to hold that one can associate with one's self, whether it be argued that the association is between an individual and his sole proprietorship, or with a corporation of which he is the only named officer and shareholder. Further, the law of Ohio requires that criminal statutes be strictly construed against the state.

{¶49} R. C. 2901.04(A) requires that criminal statutes "shall be strictly construed against the state, and liberally construed in favor of the accused."

> It is well accepted that the cornerstone of statutory construction and interpretation is legislative intention. In order to determine legislative

intent it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself. 'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.' Moreover, it is well settled that to determine the intent of the General Assembly 'it is the duty of this court to give effect to the *words used* [in a statute], not to delete words used *or to insert words not used*.'

(Emphasis sic.) (Citations omitted.) *State v. Jordan*, 89 Ohio St.3d 488, 492 (2000).

{¶50} The majority has stretched its liberal interpretation of the statutes to extreme lengths to reach an absurd result. I would overrule the State's First and Third assignments of error, and find the Second assignment to be moot as it is immaterial to the issue being considered.